### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

**DYLAN J. THENO,**

      **Plaintiff,**

v.                                                 Case No. 04-2195-JWL

**TONGANOXIE UNIFIED SCHOOL**
**DISTRICT NO. 464, et al.,**

      **Defendants.**

### MEMORANDUM AND ORDER

This case arises from student-on-student harassment of plaintiff Dylan J. Theno while he was a junior high and high school student in defendant Tonganoxie Unified School District No. 464. On June 24, 2005, this court issued a Memorandum and Order (doc. 91) denying the school district's motion for summary judgment on plaintiff's claim that the school district violated Title IX of the Education Amendments Act of 1972 (Title IX), 20 U.S.C. §§ 1681 *et seq.*, by being deliberately indifferent to the harassment. *See generally Theno v. Tonganoxie Sch. Dist. No. 464*, — F. Supp. 2d —, 2005 WL 1501425, at *1-*15 (D. Kan. June 24, 2005) (publication forthcoming). This matter is presently before the court on the school district's Motion to Reconsider or, Alternatively, to Alter or Amend Judgment (doc. 99). For the reasons explained below, the court finds the school district's arguments to be without merit and, accordingly, denies the motion for reconsideration.

A motion seeking reconsideration "shall be based on (1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice." D. Kan. Rule 7.3(b); *cf. Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (stating these same three grounds for a Rule 59(e) motion). Reconsideration is also appropriate where a court "has obviously misapprehended a party's position on the facts or the law." *See Hammond v. City of Junction City*, 168 F. Supp. 2d 1241, 1244 (D. Kan. 2001). Here, the school district urges the court to reconsider its previous ruling in order to correct clear error and prevent manifest injustice. The school district's arguments are two-fold: first, the court's finding that there is a genuine issue of material fact regarding whether the harassment of plaintiff constituted gender-based discrimination is without factual or legal support and, second, this court's finding that there is a genuine issue of material fact regarding whether the school district was deliberately indifferent is contrary to the controlling precedent of *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664 (10th Cir. 1998). As explained below, the court has considered the school district's arguments and nevertheless remains convinced that the court's reasons for denying summary judgment are sound. Plaintiff has raised a genuine issue of material fact regarding whether the harassment constituted sex-based discrimination and also whether the school district was deliberately indifferent to known acts of harassment.

## I.     Whether the Harassment Constituted Discrimination Because of Sex

This is a same-sex harassment case in which plaintiff must prove the elements of an opposite-sex student-on-student Title IX harassment claim as set forth in *Davis v. Monroe*

2

*County Board of Education*, 526 U.S. 629 (1999), and *Murrell v. School District No. 1*, 186 F.3d 1238 (10th Cir. 1999), and additionally that the same-sex harassment was not merely tinged with offensive sexual connotations but actually constituted discrimination based on plaintiff's sex. *Theno*, 2005 WL 1501425, at *11 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). This court previously recognized that plaintiff had not established he was discriminated against based on his sex by virtue of any of the three evidentiary methods listed by the Supreme Court in *Oncale* but that these three methods were intended to be instructive, not exhaustive. *Id.* at *12. The court predicted based on an unpublished opinion from the Tenth Circuit, *see James v. Platte River Steel Co.*, 113 Fed. Appx. 864, 867-68, 2004 WL 2378778 (10th Cir. 2004) (unpublished table opinion), that the Tenth Circuit would agree with the other Courts of Appeal which have held that the gender stereotyping theory adopted by the Supreme Court in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 235 (1989), provides another method (other than the three methods listed in *Oncale*) for proving that same-sex harassment is based on sex. *Theno*, 2005 WL 1501425, at *12. In a published opinion issued only four days after this court's opinion, the Tenth Circuit in *Medina v. Income Support Division*, — F.3d —, 2005 WL 1519061, at *3 (10th Cir. June 28, 2005) (publication forthcoming), confirmed that the *Price Waterhouse* gender stereotyping theory provides an alternative to the three methods listed in *Oncale* that a plaintiff in a same-sex sexual harassment suit can use to prove that he or she was discriminated against because of sex. *Id.* Although *Medina* was a Title VII case, for reasons stated in the court's prior Memorandum and Order (as well as later in this Memorandum and Order), its reasoning applies with equal

3

force in the Title IX context and consequently the *Price Waterhouse* gender stereotyping theory provides a method for plaintiff to prove that the same-sex harassment in this case constituted discrimination based on plaintiff's sex.[1]

In the court's prior Memorandum and Order the court found that plaintiff had provided sufficient evidence from which a rational trier of fact could infer that plaintiff was discriminated on the basis of sex under the gender-stereotyping theory approved by the Supreme Court in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 235 (1989). The court reasoned as follows:

> In this case, a rational trier of fact could infer that plaintiff was harassed because he failed to satisfy his peers' stereotyped expectations for his gender because the primary objective of plaintiff's harassers appears to have been to disparage his perceived lack of masculinity. The name-calling, standing alone, probably would not be sufficient to withstand summary judgment. *See, e.g.*, *Benjamin v. Metro. Sch. Dist.*, No. 00-0891-C-T/K, 2002 WL 977661, at *3-*4 (S.D. Ind. Mar. 27, 2002) (holding the harassers' use of the terms "bitch," "whore," and "slut" were not based on gender bias under *Oncale*); *Burwell v. Pekin Cmty. High Sch. Dist. 303*, 213 F. Supp. 2d 917, 930-31 (C.D. Ill. 2002) (remarking that there was little in the record to support the fact that males who called the female plaintiff "bitch," "pussy," and "slut" were motivated by the plaintiff's gender). But, in this case, the bulk of the more severe harassment traced its origins back to the rumor that began when plaintiff was in seventh grade that he was caught masturbating in the bathroom. The fact that plaintiff's peers made crude drawings and teased him because he was perceived to be a masturbator, when combined with arguably related crude name-calling, reflects that plaintiff's harassers believed that he did not conform to male stereotypes by <u>not</u> engaging in such behavior at school, i.e., that he did not act as a man should act. Consequently, plaintiff has raised a genuine issue of material fact regarding whether he was harassed on the basis of his sex. *See, e.g.*,

---

[1] Indeed, in its reply brief defendant concedes that this court is bound by Tenth Circuit precedent in *Medina* on this issue, but states that it is preserving the argument that a gender stereotyping theory has not been accepted under Supreme Court precedent.

4

>*Schmedding v. Tnemec Co.*, 187 F.3d 862, 865 (8th Cir. 1999) (complaint stated Title VII same-sex harassment claim where harassment included rumors that falsely labeled the plaintiff as homosexual "in an effort to debase his masculinity"); *Montgomery v. Indep. Sch. Dist. No. 709*, 109 F. Supp. 2d 1081, 1092-93 (D. Minn. 2000) (complaint stated Title IX same-sex harassment claim under gender stereotyping theory where plaintiff did not meet his peers' stereotyped expectations of masculinity).

*Theno*, 2005 WL 1501425, at *12.

In the school district's memorandum in support of its motion for reconsideration, it notably did not address the two cases that the court cited as involving facts most like those at issue in this case. In *Schmedding v. Tnemec Co.*, 187 F.3d 862 (8th Cir. 1999), the district court had dismissed the plaintiff's Title VII hostile work environment claim on the grounds that the plaintiff's complaint failed to allege that the harassment was based on sex as opposed to sexual orientation, which is not actionable. *Id.* at 863-64. On appeal, the Eighth Circuit held that the plaintiff stated a cognizable Title VII claim inasmuch as he was harassed "because of sex" where the complaint alleged that he was patted on the buttocks, asked to perform sexual acts, given derogatory notes referring to his anatomy, called names such as "homo" and "jerk off," and was subjected to the exhibition of sexually inappropriate behavior by others including unbuttoning of clothing, scratching of crotches and buttocks, and humping the door frame to his office. *Id.* at 865. As in *Schmedding*, the conduct at issue in this case likewise involved sexually derogatory behavior, all of which denigrated plaintiff's masculinity. He was taunted with phrases like he's a "fag," "likes to suck cock," and "masturbates with fish." He was asked "How was it fag?" and "Don't you need to make a trip to the bathroom?" One student put a piece of string cheese in his mouth and said "I'm Dylan sucking a dick." He was mocked by

5

another student who said, "Look, I'm Dylan, my name is Jack. I jack off." One student called him the jack-off kid. Two boys spat on the wall in the bathroom and said, "Look, Dylan was here," implying that he had ejaculated after masturbating on the bathroom wall. One student told the gym teacher that he needed to go check on Dylan because he might be jacking off. Although *Schmedding* involved the sufficiency of the allegations in the plaintiff's complaint whereas this case involves an evaluation of the evidence on summary judgment, in both cases the harassment was of such a nature that it could constitute discrimination because of, or on the basis of, sex.

Harassment of a similar nature was also at issue in *Montgomery v. Independent School District No. 709*, 109 F. Supp. 2d 1081 (D. Minn. 2000). In *Montgomery*, the district court denied the defendant's motion for judgment on the pleadings on the plaintiff's Title IX claim. The court reasoned that plaintiff's complaint fairly could be characterized as alleging that the harassing students engaged in misconduct because the plaintiff did not meet their stereotyped expectations of masculinity. *Id.* at 1090. The plaintiff had alleged that "his harassers called him names targeted at homosexuals and spread rumors about his sexual orientation, as well as subjecting him to more severe forms of misconduct such as asking him for sexual favors, grabbing his buttocks and inner thighs, and subjecting him to acts of pretended anal rape." *Id.* at 1093. Again, in *Montgomery* as in *Schmedding* and this case, the harassment consisted of denigrating remarks about plaintiff's sexuality and his perceived lack of masculinity. *See also, e.g.*, *EEOC v. Grief Bros. Corp.*, Case No. 02-CV-468S, 2004 WL 2202641, at \*10-\*15 (W.D.N.Y. Sept. 30, 2004) (denying the defendant's motion for summary judgment based on

evidence of a similar nature under a gender stereotyping theory of discrimination). Given the courts' holdings in those cases, this court simply cannot find as a matter of law that this type of harassment does not constitute unlawful harassment under a gender stereotyping theory.

The school district argues that under a gender stereotyping theory there must be evidence that plaintiff was effeminate and here the evidence does not reflect that plaintiff's harassers actually perceived him to be effeminate. Certainly, harassment of a male because his harassers perceive him to be effeminate constitutes discrimination under a gender stereotyping theory. This type of harassment is quintessentially the male corollary to the female plaintiff in *Hopkins*, who was perceived as being too macho. But the Supreme Court in *Price Waterhouse* did not adopt a macho/effeminate theory of gender discrimination. Rather, it explicitly adopted a theory of harassment based on failure to conform to gender stereotypes. As illustrated by *Schmedding* and *Montgomery*, discussed *supra*, the issue is not whether a male plaintiff is effeminate, but rather whether he was harassed on the grounds that he was perceived as failing to satisfy stereotypical gender expectations. Here, viewing the evidence in the light most favorable to plaintiff, that criteria is satisfied. Based on the origin and common theme of the harassment, which was a rumor that plaintiff was caught masturbating in the bathroom in seventh grade, a rational trier of fact could conclude that plaintiff was harassed because his harassers perceived that he did not act as they believed a man (or perhaps more accurately a teenage boy) should act.

The school district also argues that masturbation is sexual, not gender specific, and therefore any person, whether male or female, rumored to have been caught masturbating at

7

school would be considered to have acted outside the norm. The school district is correct that, viewed in isolation, the act of masturbation itself is not necessarily gender specific. But it is not the act of rumored masturbation that arguably constituted the sex-based harassment in this case. The rumor merely served as the impetus and common theme threading through four years of harassment designed to emasculate, humiliate, and ridicule him. It is the theme of the harassment – denigrating plaintiff's male sexuality – not the theme of the rumor, that arguably constituted sex-based harassment.

The school district also directs this court's attention to *Hamm v. Weyauwega Milk Products, Inc.*, 332 F.3d 1058 (7th Cir. 2003), in which the Seventh Circuit affirmed the district court's decision granting the defendant's motion for summary judgment because the employee failed to establish that he was discriminated against "because of sex." *Hamm*, however, stands for nothing more than the well settled proposition that Title VII has not been extended to permit claims of harassment based on an individual's sexual orientation. In *Hamm*, the Seventh Circuit rejected application of a gender stereotyping theory of harassment because the evidence revealed that the harassment was based on the plaintiff's poor work performance and his co-workers' perceptions of his sexual orientation. *Id.* at 1062. Quite simply, the evidence in *Hamm* revealed that the plaintiff was discriminated against, if at all, based on his perceived sexual orientation, which is not actionable, rather than based on his failure to conform to gender stereotypes, which is actionable. In contrast, here plaintiff's sexual orientation appears to be irrelevant to his claim. It is undisputed that he is not homosexual and there is no evidence from which it can be inferred that his harassers actually perceived him to

8

be homosexual. Rather, they simply used disparaging homosexual names as terms of derision. Consequently, the proposition stood for by *Hamm* – that harassment based on perceived sexual orientation is not actionable – simply does not apply in this case.

The school district also relies on the Seventh Circuit's opinion in *Shepherd v. Slater Steels Corp.*, 168 F.3d 998 (7th Cir. 1999). That case, however, actually supports the court's holding that plaintiff has raised a genuine issue of material fact sufficient to withstand summary judgment on the issue of whether the harassment of plaintiff constituted discrimination based on his sex. Although the same-sex harassment in *Shepherd* was of a different nature than the alleged harassment in this case – e.g., numerous incidents of the plaintiff's co-worker exposing himself to the plaintiff – like the harassment in this case the harassment in *Shepherd* similarly involved numerous sexual innuendos and crude gestures. The district court granted summary judgment in favor of the defendant employer because, the court reasoned, "there was evidence in the record that [plaintiff's harasser] had engaged in sexual conduct in front of female as well as male workers." *Id.* at 1003. On appeal, the Seventh Circuit reversed, reasoning that under *Oncale* "there must be evidence from which the factfinder could infer that [plaintiff's harasser] harassed him because he is a man." *Id.* at 1007. What matters is not whether the plaintiff has alleged facts that correspond exactly to any examples identified by the Supreme Court, "but whether a reasonable factfinder could infer from those facts that [the plaintiff] was harassed 'because of' his sex." *Id.* at 1009. The court emphasized that on summary judgment the court owes the plaintiff "the benefit of every reasonable inference that can be drawn from the facts" before the court and, based on the

9

record before the Seventh Circuit in *Shepherd*, the court held that "the finder of fact could infer that the harassment was sex-based." *Id.* In *Shepherd*, as in this case, taking all reasonable inferences from the evidence in plaintiff's favor as the court must on summary judgment, the harassment was so crude and sexually charged that it went beyond mere run-of-the-mill horseplay, profane taunting, or casual obscenities. Under the circumstances, what to make of the harassers' behavior "is a task that requires one to weigh the tone and nuances of [the harassers'] words and deeds and a host of other intangibles that the page of a deposition or an affidavit simply do not reveal. This is a task for the factfinder after trial, not for the court on summary judgment." *Id.* at 1010. All that the court is saying here is that one permissible view of the evidence is that plaintiff was harassed based on his sex, not that the harassment necessarily constituted sex-based discrimination.

Lastly, the school district takes the position that the court improperly "*sua sponte* salvaged plaintiff's claim by suggesting a theory never raised by plaintiff--that plaintiff had been harassed as an act of gender stereotyping." In this respect, the school district cites *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252 (1st Cir. 1999), in which the First Circuit held that the plaintiff had waived his gender stereotyping argument by failing to adequately advance and develop that particular theory before the district court. *Id.* at 259-61. The First Circuit's reasoning in that case, however, rested on principles of appellate review that are not implicated here. In order to be entitled to summary judgment, the school district had the initial burden of establishing an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Once the school district met that burden, the burden shifted

10

to plaintiff to set forth specific facts showing that there was a genuine issue of material fact to be decided by the trier of fact.  In this case, the facts set forth by the plaintiff in his motion for summary judgment revealed a genuine issue of material fact regarding whether plaintiff suffered harassment "on the basis of sex" under *Price Waterhouse* and related case law such as *Schmedding* and *Montgomery*.  Plaintiff, then, satisfied his burden of setting forth specific facts to withstand summary judgment.  Simply because it was the court, rather than the plaintiff, that deduced the applicable legal theory does not mean that the school district is entitled to summary judgment on this claim.

## II.     Whether the School District Was Deliberately Indifferent to the Harassment

The school district also contends that the court's finding that plaintiff raised a genuine issue of material fact regarding whether the school district was deliberately indifferent to known acts of harassment is contrary to the controlling precedent of *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664 (10th Cir. 1998).  The school district focuses on the fact that in *Adler* the Tenth Circuit stated that "stoppage of the harassment by the disciplined perpetrator evidences effectiveness," *id.* at 676, and in this case the school district's response to each incident of known harassment largely stopped harassment by the individual perpetrators.  The court finds the school district's reliance on *Adler* to be misplaced because the court's decision is not inconsistent with *Adler* and the facts of this case are distinguishable from those in *Adler*.

As a threshold matter, the court notes that it could deny this aspect of defendant's motion to reconsider solely on the grounds that defendant did not raise this argument in connection with its motion for summary judgment.  A motion to reconsider is not an

11

opportunity to rehash previously rejected arguments or to offer new legal theories or facts. *Demster v. City of Lenexa*, 359 F. Supp. 2d 1182, 1184 (D. Kan. 2005). It is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed. *Voelkel v. Gen. Motors Corp.*, 846 F. Supp. 1482, 1483 (D. Kan.), *aff'd*, 43 F.3d 1484 (10th Cir. 1994). Defendant's motion to reconsider is the first time that defendant has relied on *Adler* in any meaningful way. The summary judgment record reveals that defendant cited *Adler* in one paragraph in its memorandum in support of its motion for summary judgment and, even then, the citation to *Adler* was purely coincidental because it happens to appear within a block quote from *Scarberry v. Exxonmobil Oil Corp.*, 328 F.3d 1255, 1259 (10th Cir. 2003). Defendant's deliberate indifference arguments in the summary judgment record, like plaintiff's arguments on this issue, were centered around Title IX case law. Just as the parties did, then, in evaluating the deliberate indifference issue the court turned to Title IX case law, not Title VII case law, and the court found ample Title IX case law dealing with this issue.

In any event, the court's ruling on this issue under Title IX case law is not inconsistent with the Tenth Circuit's Title VII holding in *Adler*. *Adler* does not, as defendant contends, establish a bright-line rule that a defendant cannot be held liable any time the defendant stops the harassment by the disciplined perpetrator but nonetheless fails to deter future harassers. The central tenet of *Adler* is that in measuring an employer's response to hostile work environment sexual harassment the court must ask "whether the remedial and preventative action was reasonably calculated to end the harassment." 144 F.3d at 676. "A stoppage of the harassment shows effectiveness, which in turn evidences such reasonable calculation." *Id.*

Closely related to this principle, the court noted that in a prior case it "implied . . . that stoppage of the harassment by the disciplined perpetrator evidences effectiveness." *Id.* But the court proceeded to explain that the employer is obliged to respond to repeat conduct and whether the next employer response is reasonable "may very well depend upon whether the employer progressively stiffens its discipline, or vainly hopes that no response, or the same response as before, will be effective." *Id.* Thus, "to be reasonable, responses must progress more rapidly in proportion to more serious and frequent harassment." *Id.* at 676-77. In *Adler*, the Tenth Circuit found that the defendant's response with respect to each of the known harassers was effective and therefore reasonable. The court rejected the plaintiff's argument that the employer's responses were inadequate because although they stopped the harassment by the disciplined harassers, other individuals subsequently harassed her. The Tenth Circuit explained:

> The Ninth Circuit has held that *in measuring the reasonableness of an employer response a court may consider whether other potential harassers are deterred. We also think this fact relevant*, but Plaintiff came forward with no evidence in the district court that any future harasser knew of, or was at all motivated by, any prior [employer] response. Without evidence of such a nexus between a prior response and later harassment by others, the later harassment is irrelevant to the adequacy of the prior response.

*Id.* at 678 (citation omitted; emphasis added).

Indeed, the Sixth Circuit's reasoning in *Vance* is consistent with the Tenth Circuit's reasoning in *Adler*. The Sixth Circuit reiterated that the deliberate indifference standard announced by the Supreme Court focuses on whether the school district's response was clearly unreasonable in light of the known circumstances. *Id*. at 260. Looking to the same

13

"effectiveness" concept that was central to the Tenth Circuit's reasoning in *Adler*, the Sixth Circuit explained that a

> minimalist response is not within the contemplation of a reasonable response. . . . Thus, where a school district has knowledge that its remedial action is inadequate and ineffective, it is required to take reasonable action in light of those circumstances to eliminate the behavior. Where a school district has actual knowledge that its efforts to remediate are ineffective, and it continues to use those same methods to no avail, such district has failed to act reasonably in light of the known circumstances.

*Id.* at 260-61. In *Vance*, the court affirmed the jury's finding of deliberate indifference where the school district had continued to use the same ineffective method – "talking to the offenders" – to no acknowledged avail. *Id.* at 262.

In this case, like *Vance* and unlike *Adler*, a rational trier of fact could infer from the evidence that future harassers were undeterred by the school's minimal responses to the known acts of harassment. Given the nature of a school environment and in light of the evidence in the record here, a jury could infer that the student body was generally aware of the fact that plaintiff's harassers were not meaningfully disciplined. A jury could conclude that it would have been apparent to other students, for example, that the harassers' parents were not called to the school and that the harassers were not given detentions or suspensions for their misconduct. Additionally, in this case the evidence in the summary judgment record revealed that after the incident with C.L. in eleventh grade, C.L.'s family was unhappy that he was the first to receive a detention for harassing plaintiff, thus suggesting general awareness that the harassment had been ongoing for years without meaningful discipline sufficient to deter subsequent harassers. Additionally, at times plaintiff's harassers were counseled collectively

14

and therefore may have been privy to the level of discipline meted out to others for their harassment of plaintiff. Thus, viewing the evidence in the light most favorable to plaintiff as the court must on summary judgment, the school district's arguably minimal response of merely talking to plaintiffs' harassers was ineffective in stopping the harassment. In this case, then, unlike in *Adler*, the court believes that a rational trier of fact could find the requisite nexus between the lack of the adequacy of the prior response and later harassment. Consequently, the adequacy of the school's response to known acts of harassment is an issue that must be resolved by the jury.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Reconsider or, Alternatively, to Alter or Amend Judgment (doc. 99) is denied.

**IT IS SO ORDERED** this 27th day of July, 2005.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge