# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**DYLAN J. THENO,**

        **Plaintiff,**

**v.**                                    **Case No. 04-2195-JWL**

**TONGANOXIE UNIFIED SCHOOL
DISTRICT NO. 464, et al.,**

        **Defendants.**

_____

## MEMORANDUM AND ORDER

This case arises from student-on-student harassment of plaintiff Dylan J. Theno while he was a junior high and high school student in defendant Tonganoxie Unified School District No. 464.   The jury found that the school district violated Title IX of the Education Amendments Act of 1972 (Title IX), 20 U.S.C. §§ 1681 *et seq.*, by being deliberately indifferent to the harassment and awarded plaintiff $250,000.   This matter is now before the court on plaintiff's Motion for Statutory Attorney Fees and Expenses Pursuant to 42 U.S.C. § 1988 (Doc. 150).   For the reasons explained below, this motion is granted in part and denied in part.   Specifically, the court will award plaintiff $268,793.51 in attorney fees and expenses.

Title 42 U.S.C. § 1988(b) provides that in certain federal civil rights actions, including those brought pursuant to Title IX, "the court, in its discretion, may allow the prevailing party[1]

_____

[1] The school district does not dispute that plaintiff is a prevailing party for purposes of § 1988 and that he therefore is entitled to some award.

. . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b).  To determine a reasonable fee, the "court must arrive at a 'lodestar' figure by multiplying the hours plaintiffs' counsel reasonably spent on the litigation by a reasonable hourly rate." *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998).  The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.  *Id.*  Once the fee applicant has met this burden, the lodestar figure is presumed to be reasonable. *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).

## A.       Reasonable Hours

In order to prove the number of hours reasonably spent on the litigation, the party must submit "meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case*, 157 F.3d at 1250.  The court can reduce the number of hours when the time records provided to the court are inadequate.  *Id.*  The district court must reduce the actual number of hours expended to a reasonable number to ensure that services an attorney would not properly bill to his or her client are not billed to the adverse party.  *Id.*  The court must also ensure that the fee applicant has exercised billing judgment with respect to the number of hours worked and billed.  *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005).  "Billing judgment consists of winnowing hours actually expended down to hours reasonably expended." *Id.*  A fee applicant must make a good faith effort to exclude from the fee request hours that are excessive, redundant, or otherwise unnecessary. *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).

Plaintiff's fee application seeks compensation for a total of 1,220.6 hours, which includes 619.1 hours for lead attorney Arthur Benson, 442.7 hours for Jamie Kathryn Lansford, and 158.8 hours for Aften McKinney. The court has reviewed the billing records submitted by plaintiff and readily concludes that plaintiff has met his burden of establishing the reasonableness of the hours expended by submitting meticulous, contemporaneous time records showing all hours for which compensation is sought and reflecting the specific tasks associated with those hours. The court also has reviewed those billing entries in conjunction with the affidavit submitted by Mr. Benson, and the court is satisfied that counsel has exercised billing judgment by making a good faith effort to exclude from the fee request hours that are excessive, redundant, or unnecessary.

The school district argues that the court should reduce the total number of hours by 14.8[2] hours for lead counsel's time which was devoted to unidentified experts and/or communicating with Dr. Dragan, an expert who plaintiff did not call to testify at trial. The relevant issue in determining an attorney fee award, however, is not whether in hindsight the particular time expenditure was strictly necessary but rather whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures. *See Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992); *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d

---

[2] The school district's response to plaintiff's motion for attorney fees states 18.1 hours, but the time entries listed in Table 1 total 18.4 hours. Also, one billing entry for 3.6 hours actually pertains to plaintiff counsel's preparation for the deposition of the school district's expert Dr. Devlin, not plaintiff's expert Dr. Dragan. Thus, 18.4 hours minus 3.6 hours equals 14.8 hours.

1169, 1177 (6th Cir. 1990).   In this case, both parties retained experts.   Simply because those

retained experts ultimately did not testify at trial does not mean that the time plaintiff's

counsel devoted to those experts was unreasonable.   Moreover, plaintiff points out that even

though Dr. Dragan ultimately was not called to testify at trial, that does not mean his work in

the case was of no value to plaintiff's presentation of his case.   Plaintiff's counsel states that

he learned information from Dr. Dragan about how sexual harassment is and should be dealt

with in schools, and this aided the overall work of counsel and helped counsel present

plaintiff's case more effectively.   Thus, the court does not believe that these specific billing

entries are unreasonable.

Related to this issue is the school district's argument that the court should reduce the

total number of hours by 27.5 hours for time entries which fail to separate time spent with Dr.

Dragan from other activities.   This consists of three billing entries by Ms. Lansford of 10.0

hours, 8.5 hours, and 9.0 hours.   The court has reviewed these billing entries (listed on the

school district's Table 2) and finds them to be reasonable.   Again, the mere fact that these

billing entries include time that counsel devoted to Dr. Dragan's involvement in the case as a

retained expert does not make these billing entries unreasonable.

The school district also argues that the court should reduce the total number of hours

by 16.2 hours for Mr. Benson's time entries related to summary judgment briefing which fail

to delineate between time devoted to the Title IX claim versus time devoted to plaintiff's state

law claim.   The court has scrutinized plaintiff's billing entries for time spent on unsuccessful

claims.   These billing entries reflect the following time spent on unsuccessful claims: time

4

spent by Mr. Benson in May of 2005 working on plaintiff's response to the school district's motion for summary judgment (as pointed out by the school district); time spent by Ms. Lansford on October 21, 2004, conducting research in preparation for settlement discussions; time spent by Ms. Lansford working on the pretrial order in early March of 2005; time spent by Ms. Lansford in May of 2005 working on plaintiff's response to the school district's motion for summary judgment; time spent by Ms. Lansford in May of 2005 voluntarily dismissing plaintiff's equal protection claim; and time spent by Ms. McKinney on January 30, 2004, performing legal research on plaintiff's due process claim.

The court finds that counsel's time spent pursuing these unsuccessful claims is not unreasonable so as to warrant a reduction of the number of hours reasonably spent on the litigation. The court reaches this conclusion primarily because counsel did not pursue these claims in an unreasonable manner. As a threshold matter, counsel did not act unreasonably by initially choosing to pursue all four claims. Then, counsel abandoned the due process claim in the pretrial order and voluntarily dismissed the equal protection claim. Although counsel pursued the negligent supervision claim at the summary judgment phase and the court ultimately determined that this claim was without merit, the court cannot find that counsel acted unreasonably by attempting to keep this claim in the case given the hotly contested nature of plaintiff's Title IX claim. Additionally, the court is unpersuaded that the number of hours counsel reasonably spent on this litigation was needlessly increased by plaintiff's pursuit of the three unsuccessful claims. Discovery was undoubtedly conducted to determine the facts surrounding the harassment of plaintiff and the school personnel's response to the harassment,

all of which would have been pertinent to all of plaintiff's claims. At the summary judgment phase, the bulk of plaintiff's counsel's time, attention, and in-depth argument was devoted to plaintiff's Title IX claim rather than plaintiff's negligent supervision claim. And, the significant amount of time that plaintiff's counsel spent on this case after surviving summary judgment was devoted entirely to plaintiff's successful Title IX claim. Simply put, this case ultimately was a Title IX case and plaintiff's counsel's billing entries reflect that counsel focused their efforts on plaintiff's Title IX claim and did not devote unnecessary or wasteful time to plaintiff's other unsuccessful claims. In fact, the time devoted to plaintiff's unsuccessful claims was de minimis in the scope of this litigation. Thus, the court finds that no reduction to the number of hours reasonably spent on this litigation is warranted. Accordingly, the court finds that the hours requested for plaintiff's counsel are appropriate and reasonable.

**B.      Reasonable Hourly Rate**

After determining whether the hours are reasonable, the court must determine the reasonable rate. "The first step in setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." *Case*, 157 F.3d at 1256; *see also Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) (stating a reasonable hourly rate comports with rates "prevailing in the community for similar services for lawyers of reasonably competent skill, experience, and reputation"). "The party requesting the fees bears the burden of showing that the requested rates are in line with those prevailing in the

6

community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1234 (10th Cir. 2000) (quotation omitted). The focus must be on the prevailing market rate in the relevant community. *Id.* The court must determine the hourly rate by examining what the evidence shows the market commands for analogous litigation. *Id.* "The court may not use its own knowledge to establish the appropriate rate unless the evidence of prevailing market rates before the court is inadequate." *Id.*

Plaintiff requests compensation at the rate of $250 per hour for Mr. Benson. In support of the reasonableness of this hourly rate, plaintiff has submitted an affidavit from Mr. Benson. This affidavit explains that Mr. Benson has been practicing law for thirty-six years and is admitted to practice in all of the federal courts in this area as well as the Seventh Circuit and the United States Supreme Court. His practice focuses primarily on civil rights and constitutional law in the federal courts. Mr. Benson represented the plaintiffs in the Kansas City school desegregation case. He explains that the current rate customarily charged for his legal services is $320 per hour and that he believes this rate is in line with prevailing market rates for a specialty practice in civil rights litigation in this community. According to Mr. Benson, the $250 hourly rate requested is on the low end of prevailing market rates for such a practice and he has been awarded fees at the hourly rate of $250 in numerous cases in the Eighth Circuit and the Western District of Missouri. Plaintiff has also submitted affidavits from attorneys Joseph R. Calantuono, Michael Waldeck, Dirk Hubbard, and James T. Wiglesworth in which they opine that the hourly rates requested are well within the range of

fees customarily charged and are in line with the prevailing market rates in the Kansas City metropolitan area for attorneys of comparable experience and expertise.   Based on this evidence, the court finds that the requested hourly rate of $250 is reasonable for the hours Mr. Benson reasonably spent on this lawsuit.

Plaintiff requests compensation at the rate of $180 per hour for Ms. Lansford.   Ms. Lansford was first admitted to the bar twenty-two years ago and joined Mr. Benson's law firm in February of 1987.   Since that time, her litigation practice has concentrated on the areas of civil rights and constitutional law, including the Kansas City school desegregation lawsuit and employment discrimination cases.   Ms. Lansford is admitted to practice in all of the federal courts in this area as well as the United States Supreme Court.   The current rate customarily charged for Ms. Lansford's legal services is $210 per hour, although plaintiff is requesting reimbursement for her services at the hourly rate of $180.   According to Mr. Benson's affidavit, he believes this rate is in line with the prevailing market rates in the Kansas City metropolitan area for attorneys of Ms. Lansford's background and experience whose practice focuses on civil rights litigation.   Fees for her services at the hourly rate of $180 have been awarded in two cases in the Eighth Circuit and the Western District of Missouri.   Again, the affidavits from Messrs. Calantuono, Waldeck, Hubbard, and Wiglesworth state that the hourly rates requested are well within the range of fees customarily charged and are in line with the prevailing market rates in the Kansas City metropolitan area for attorneys of comparable experience and expertise.   Based on this evidence, the court finds that the requested hourly rate of $180 is reasonable for the hours Ms. Lansford reasonably spent on this lawsuit.

Plaintiff requests compensation at the rate of $95 for Ms. McKinney. Ms. McKinney was first admitted to the bar twenty-eight years ago. She has twelve years of experience practicing law. She joined Mr. Benson's law firm nine years ago and acts primarily as a research attorney supporting other litigators. Her current hourly rate is $150, but plaintiff is requesting reimbursement for her services at the hourly rate of $95. According to Mr. Benson, he believes this rate is in line with prevailing market rates in the Kansas City metropolitan area for attorneys of Ms. McKinney's background and experience. Fees for her services at the hourly rate of $95 have been awarded in two cases in the Western District of Missouri. Again, the affidavits from Messrs. Calantuono, Waldeck, Hubbard, and Wiglesworth state that the hourly rates requested are well within the range of fees customarily charged and are in line with the prevailing market rates in the Kansas City metropolitan area for attorneys of comparable experience and expertise. Based on this evidence, the court finds that the requested hourly rate of $95 is reasonable for the hours Ms. McKinney reasonably spent on this lawsuit.

The school district's argument for a reduction in the requested hourly rates is a bare assertion that the requested rates "are extreme and not consistent with prior rulings but appear to be based upon higher rates prevailing in Kansas City, Missouri, not Kansas City, Kansas." The school district argues that the court "is an expert in the reasonable hourly fees" and "should apply hourly rates awarded in the past, *i.e.*, $175 per hour for lead counsel, $150 per hour for associate counsel." The school district's argument is without merit for a variety of reasons.

9

First and foremost, under the law of this circuit "[a] district court abuses its discretion when it ignores the parties' market evidence and sets an attorney's hourly rate using the rates it consistently grant[s]." *United Phosphorus, Ltd.*, 205 F.3d at 1234 (quotation omitted); *see, e.g.*, *Beard v. Teska*, 31 F.3d 942, 955-57 (10th Cir. 1994) (concluding the district court erred by disregarding uncontroverted evidence of the local market rate and, instead, awarding the plaintiffs' attorney's customary rate). The court "must award rates compatible with competent, trustworthy evidence of the market." *Case*, 157 F.3d at 1256. The court may use its own knowledge to establish the appropriate rate only if the evidence of prevailing market rates before the court is inadequate. *Id.* In this case, plaintiff has submitted adequate evidence of prevailing market rates in the form of affidavits from Mr. Benson and four other attorneys, two of whom regularly practice law in this court. Significantly, the school district has offered absolutely no evidence to controvert the evidence submitted by plaintiff on this issue. In this respect, this case is distinguishable from the two cases cited by the school district. *See Sheldon v. Vermonty*, Case No. 98-2277, 2004 WL 2782817, at *5 (D. Kan. Dec. 3, 2004) (court established reasonable rate of $175 per hour where plaintiff submitted no evidence concerning the prevailing market rate); *Russell v. Sprint Corp.*, Case No. 02-2598, 2003 WL 21994746, at *1-*2 (D. Kan. Aug. 20, 2003) (court established reasonable rates of $175 and $150 where only evidence plaintiff submitted to establish the reasonableness of the rate was an affidavit from counsel).

Additionally, the court finds that the evidence submitted by plaintiff concerning the reasonableness of the requested hourly rates is not inconsistent with the court's own

knowledge of prevailing market rates for lawyers with skill and experience comparable to that of Mr. Benson and his colleagues.    In this respect, the court wishes to emphasize the uniqueness of Mr. Benson's numerous years of experience and his reputation with respect to litigation against school districts inasmuch as he has represented the plaintiffs in the Kansas City school desegregation case.    This case did not involve relatively commonplace employment litigation, and for that reason the hourly rates awarded in employment cases in this court are not particularly helpful in establishing a reasonable hourly rate.    This case involved a more unique and developing area of the law, and few attorneys in this area would have had the experience, expertise, tenacity, and resources to have obtained a successful verdict in this case.    Moreover, given the court's independent knowledge of escalating hourly rates in this market in recent years for many reputable firms, the court does not question the veracity of Mr. Benson's representations that his, Ms. Lansford's, and Ms. McKinney's current hourly rates substantially exceed the hourly rates plaintiff is requesting.    These considerations, combined with the evidence presented by plaintiff, lead the court to believe that prevailing market rates for lawyers of comparable skill and experience in this area would be similar to those sought by plaintiff.  *See, e.g.*, *Hofer v. Unum Life Ins. Co. of Am.*, 338 F. Supp. 2d 1252, 1256-57 (D. Kan. 2004) (court awarded $250 per hour for a partner, $175 per hour for an associate, and $75 per hour for a paralegal in a complex insurance case); *Steinert v. Winn Group, Inc.*, Case No. 98-2564, 2004 WL 2282903, at *12 (D. Kan. Aug. 31, 2004) (court awarded hourly rates for lead counsel ranging from $230 per hour in 1999 to $265 in 2002,

for another attorney ranging from $150 in 1999 to $210 in 2003, and for another attorney $145 an hour for work performed in March 2002).

The court also finds the school district's argument that plaintiff has erroneously relied on hourly rates in Kansas City, Missouri, as opposed to Kansas City, Kansas, to be without merit.   The court is unpersuaded that the market rates between civil rights practitioners in Kansas City, Missouri, versus Kansas City, Kansas, necessarily differ as significantly as the school district suggests.   Litigation attorneys on both sides of the state line frequently practice in both Kansas and Missouri courts.   Practitioners from Kansas City, Missouri, regularly practice in this court.   In any event, the school district has not presented any evidence whatsoever to satisfy the court that prevailing market rates in Kansas City, Kansas, for lawyers of comparable skill and experience to Mr. Benson and his colleagues are lower than those requested by plaintiffs.   Accordingly, the court finds the hourly rates requested by plaintiff to be reasonable.

**C.     Adjustment from the Lodestar**

Determining the lodestar amount does not, however, end the court's process of determining the reasonableness of the fee.   *Chavez v. Thomas & Betts Corp.*, 396 F.3d 1088, 1103 (10th Cir. 2005).   The court may also consider other factors in determining whether to adjust a fee upward or downward, including the reasonableness of the fees in light of the success obtained.   *Id.*   In this case, the school district's predominant argument in opposition to plaintiff's motion for attorney fees is that the court should reduce the lodestar amount because plaintiff ultimately succeeded on only one of the claims that he originally asserted.

12

By way of background, plaintiff originally asserted four claims.  Count I was the Title IX claim upon which he succeeded at trial.  Count II was an equal protection claim that plaintiff voluntarily dismissed with prejudice after the school district filed its motion for summary judgment.  Count III was a due process claim that plaintiff abandoned in the pretrial order.  And, Count IV was a state law negligent supervision claim upon which the court granted summary judgment in favor of the school district.  The school district argues that the court should reduce the lodestar amount by fifty percent because of plaintiff's partial success.

"In evaluating whether the lodestar amount should be adjusted when the prevailing party obtained only partial success, the court must consider two questions: (1) whether the claims on which the plaintiff did not prevail were related to those on which [the plaintiff] did prevail; and (2) whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award."  *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1493 (10th Cir. 1994) (brackets in original; further quotation omitted); *see also Browder v. City of Moab*, 427 F.3d 717, 722-23 (10th Cir. 2005) (listing these same two considerations).  In answering the first of these two inquiries, "claims are related 'if they involve a common core of facts or will be based on related legal theories.'"  *Browder*, 427 F.3d at 723 n.10 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)).  The Supreme Court has explained that in cases involving such related claims

> [m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.  Such a lawsuit cannot be viewed as a series of discrete claims.  Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

13

*Hensley*, 461 U.S. at 435.  With respect to the second inquiry, a plaintiff should recover a fully compensatory fee where counsel has obtained excellent results.  *Id.*  "[T]he most critical factor is the degree of success obtained."  *Id.* at 436.

In this case, all of plaintiff's original four claims involved a common core of facts—that is, other students' harassment of plaintiff during his junior high and high school years and school personnel's responses to the incidents of harassment.  The school district points out that plaintiff's equal protection claim focused not only upon the harassment directed at him but equally upon incidents and conduct involving other students; that the due process claim also involved a state created danger theory; that the constitutional claims gave rise to qualified immunity issues; and that the state law negligence claim required proof of physical injury.  But similar arguments could be raised in any case involving different claims because proof requirements will always vary between claims.  The critical inquiry, according to the plain language of the Supreme Court, is whether the claims involved a common core of facts or were based on related legal theories.  Here, all of plaintiff's original claims were related and intertwined with his Title IX claim through a common core of facts and related legal theories inasmuch as each of the claims involved the adequacy of the school district's response to the other students' harassment of plaintiff.  This is not a case in which the "unsuccessful claims were . . . distinct in *all* respects from the successful claims."  *Chavez*, 396 F.3d at 1103 (emphasis in original; internal quotation omitted).  Accordingly, reduction of the lodestar is not warranted on the grounds that plaintiff failed to prevail on unrelated claims.  *See, e.g.*,

14

*Robinson v. City of Edmond*, 160 F.3d 1275, 1282-84 (10th Cir. 1998) (district court erroneously reduced lodestar where the unsuccessful claims were intertwined with the successful claims through a common core of facts or related legal theories).

Turning to the issue of the degree of success achieved by plaintiff, the court finds that counsel obtained excellent—indeed, extraordinary—results for plaintiff. Plaintiff pursued his Title IX claim as his predominant legal theory, and it is difficult to envision how he could have recovered a greater amount of damages if he had also succeeded on any of his other claims. Moreover, the legal theory upon which plaintiff's counsel ultimately succeeded is a developing area of the law. Although the school district attempts to find fault with plaintiff's counsel on the basis that it was the court that "first served up a new [gender-based harassment] theory in it's [sic] order on defendant's motion for summary judgment," Resp. to Mot. for Atty. Fees (Doc. 163), at 5, the court finds it significant that plaintiff's counsel knew enough about this area of the law to develop and present the facts of this case sufficiently to raise a triable issue of fact regarding whether the harassment was based on plaintiff's gender. Additionally, counsel's presentation of the evidence at trial was outstanding. Given that the degree of success is the most critical factor in determining whether a lodestar adjustment is warranted, the court finds that notwithstanding the fact that plaintiff achieved only partial success because he ultimately did not prevail on his other three related claims, plaintiff is entitled to a full award of the lodestar amount in this case.

**D.     Expenses**

In addition to attorney's fees, the prevailing party is entitled to recover reasonable expenses that are usually itemized and billed separately, as long as the expenses are reasonable. *Sussman v. Patterson*, 108 F.3d 1206, 1213 (10th Cir. 1997). "The attorneys requesting fees bear the burden of establishing the amount of compensable expenses to which they are entitled." *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1257 (10th Cir. 1998). In this case, plaintiff seeks a total of $22,225.82 in itemized expenses. Mr. Benson's affidavit states that these are all expenses which are ordinarily chargeable to a client in his office and also are ordinarily chargeable to clients by lawyers in this metropolitan area. The affidavits of Messrs. Calantuono, Waldeck, Hubbard, and Wiglesworth also state that the type of expenses for which reimbursement is being sought are the same sorts of expenses that their firms charge to clients, are not a part of office overhead, and are not reflected in attorneys' hourly rates. Except as discussed below, the school district does not object to these expenses. The court has reviewed the itemized expenses to which the school district has not objected, finds them to be reasonable, and is satisfied based on the record that these items are usually itemized and billed separately by attorneys in this area. Thus, plaintiff is entitled to recover the expenses to which the school district does not object in the amount of $17,667.14. The court, then, turns to the expenses to which the school district objects.

First, the school district objects to $3,450.52[3] in "monthly expenses," which includes "postage, copies, fax, long distance."  The school district raises two objections to recovery of these expenses.  First, the school district argues that plaintiff has made no effort to itemize these expenses.   In plaintiff's reply brief and the attachments thereto, however, plaintiff has provided a detailed itemization of these monthly expenses.  Thus, the court finds this argument to be without merit.  Second, the school district argues that plaintiff has failed to establish that the copies for which plaintiff is seeking reimbursement were necessarily obtained for use in the case or that the amount of the request is reasonable.  The court agrees.  The portion of "monthly expenses" attributable to copies is 13,989 copies at 20¢ each, or $2,797.80. Plaintiff has not established the reasonableness of such a significant number of copies and the court cannot independently conclude that nearly 14,000 copies were necessary in this case, particularly in light of the fact that this case was assigned to the court's electronic case filing system.  The court will exercise its discretion and reduce the number of copies to 5,000.  The court also finds 20¢ per page to be excessive and will reduce the rate to 10¢ per page.  *See, e.g.*, *Caputo v. Prof'l Recovery Servs., Inc.*, Case No. 00-4208, 2004 WL 1503953, at *5 (D. Kan. 2004) (reducing copying charge from 25¢ per page to 10¢ per page).  Accordingly, the court will reduce the requested amount for copying expenses to $500 (5,000 pages x 10¢ per page), which the court finds to be a reasonable amount.  *See, e.g.*, *Wilder-Davis v. Bd. of*

---

[3] The school district stated in its response that it objected to $3,324.76 in monthly expenses, but plaintiff included a claim for an additional $125.76 in monthly expenses in plaintiff's reply brief for additional monthly expenses incurred due to the passage of time. Thus, $3,324.76 plus $125.76 equals $3,450.52.

*County Comm'rs*, Case No. 98-2363, 2000 WL 1466691, at *7 (D. Kan. Aug. 8, 2000) (reducing copying expense claim from $5,266.06 to $500 based on the court's knowledge of the case and the evidence submitted by plaintiff).

Next, the school district objects to $681.51 in expenses for books that plaintiff's counsel purchased for use in connection with this case.   These books include the following titles: *Educational Administration: Concepts and Practices*; *Educational Administration: Theory, Research & Practice*; *Acute Stress Disorder: A Handbook of Theory, Assessment, and Treatment*; *Educator's Guide to Controlling Sexual Harassment*; *Post-Traumatic Stress Disorder in Litigation: Guidelines for Forensic Assessment*; *How to Talk So Kids Will Listen & Listen So Kids Will Talk*; *A Clinical Handbook/Practical Therapist Manual for Assessing and Treating Adults With Post-Traumatic Stress Disorder*; *Going Nucular:* [sic] *Language, Politics, and Culture in Controversial Times*; and *Word Myths: Debunking Linguistic Urban Legends*.   Plaintiff attempts to justify these expenses by arguing that these books were not related to legal research but were specific to this case.   Although that may be true, these books could certainly prove useful to plaintiff's counsel in future cases that may raise similar issues.   Thus, the court believes that this category of expenses more appropriately belongs in the category of attorney overhead rather than being allowed as expenses.   *See, e.g.*, *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 820 F. Supp. 1330, 1334-35 (D. Kan. 1993) (disallowing the cost of books as recoverable expenses).

Lastly, the school district urges the court to disallow $426.65 for the certified copy of Dr. Dragan's deposition because Dr. Dragan did not testify at trial.   For the same reasons

explained above with respect to plaintiff's counsel's billing entries for time spent with Dr. Dragan, the court will not disallow the cost of this deposition transcript.  Briefly stated, the court is not persuaded that this expense relating to Dr. Dragan is unreasonable simply because he ultimately did not testify at trial.  Additionally, the court notes that the school district does not challenge the evidence submitted by plaintiff to establish that this is the type of expense that is typically itemized and billed separately in this area.  Accordingly, the court will allow plaintiff to recover this expense.

## CONCLUSION

In sum, then, the court calculates plaintiff's statutory attorney fee and expense award as follows:

| Attorney | Hours | Rate | Total |
|----------|-------|------|-------|
| Arthur Benson | 619.1 | $250 | $154,775.00 |
| Jamie Kathryn Lansford | 442.7 | 180 | 79,686.00 |
| Aften McKinney | 158.8 | 95 | 15,086.00 |
| Lodestar Figure | | | $249,547.00 |
| | | | |
| Lodestar Adjustment | | | None |
| | | | |
| Expenses Requested | | 22,225.82 | |
| Disallowed for Copies | | (2,297.80) | |
| Disallowed for Books | | (681.51) | |
| Total Expenses Allowed | | | 19,246.51 |
| | | | |
| Total Fees and Expenses Awarded | | | $268,793.51 |

19

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiff's Motion for Statutory Attorney Fees and Expenses Pursuant to 42 U.S.C. § 1988 (Doc. 150) is granted in part and denied in part as set forth above.   Plaintiff is awarded $268,793.51 in attorney fees and expenses.


**IT IS SO ORDERED** this 13th day of December, 2005.


s/ John W. Lungstrum
John W. Lungstrum
United States District Judge